[Civ. No. 2668. First Appellate District, Division One.—June 27, 1919.]

## LUTHER OPELT, a Minor, etc., Appellant, v. AL. G. BARNES CO. (a Corporation), Respondent.

[1] VICIOUS ANIMALS—INJURIES CAUSED BY—ACTION FOR DAMAGES—NEGLIGENCE—PLEADING.—Where the complaint in an action for damages for personal injuries alleged to have been received by being scratched by a leopard kept by the defendant is predicated upon the keeping by defendant of a vicious and dangerous animal, known to defendant to be such, an allegation of negligence on the part of the defendant is unnecessary.

[2] ID.—LIABILITY OF OWNER FOR ACTS OF.—The owner of a leopard, having knowledge that it is a wild, untamed animal, of fierce, dangerous, vicious, ferocious character, nature, and disposition, is an insurer against the acts of such animal, unless the injured person voluntarily, or consciously, does something to bring about the injury.

[3] ID.—DUTY OF OWNER—NEGLIGENCE OF INJURED PARTY.—While the burden of the duty to exercise the highest degree of care rests upon the owner of such an animal, if the injured party imprudently, or negligently, places himself in a position to be attacked, or by his own negligence contributes to his injury, the owner will be exonerated from liability.

[4] ID.—DUTY IMPOSED UPON MINORS—WANT OF ORDINARY CARE—EVIDENCE—FINDING.—The law imposes upon minors the duty of giving such attention to their surroundings and care to avoid danger as may fairly and reasonably be expected from persons of their age and capacity; and in this action for injuries received through having been scratched by a leopard kept in a circus, in view of the fact that the plaintiff, a boy of the age of

---

1. Liability for injuries by wild animals, notes, 14 **Ann. Cas.** 61; **Ann. Cas.** 1914A, 764.

ten and one-half years, was a bright, intelligent, and alert boy, that he knew the animals were dangerous and ferocious, knew that the guard rope which he walked under was placed to keep people away from the animals because they were dangerous, and knew that the safe place from which to look at the animals was outside the rope, the court was justified in finding that the plaintiff failed to use ordinary care for his own safety.

[5] ID.—NEGLIGENCE OF MINOR—QUESTION OF FACT.—Whether a minor of tender years has comported himself with the care and prudence due from one of his years and experience is strictly a question of fact to be determined by the jury (or court) on the evidence.

APPEAL from a judgment of the Superior Court of Alameda County. Everett J. Brown, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ostrander, Clark & Carey for Appellant.

Reed, Nusbaumer & Bingaman for Respondent.

WASTE, P. J.—Plaintiff, by his guardian *ad litem*, brought this action against defendant for injuries, alleged to have been received by being scratched by a vicious leopard, one of a number of animals kept by defendant corporation in its circus. The animal was securely caged and was not at large. Defendant had judgment and plaintiff appeals.

Plaintiff, at the time of the accident was a boy of ten and one-half years of age. On the day in question, having paid the price of admission, he entered the circus to view the animals and witness the performance in the main tent. He first entered the tent in which the animals were kept in cages, arranged in a row around the circular walls of the inclosure. A guard rope, securely fastened to posts, extended entirely along, and in front of, this row of animal cages, about three feet from the ground, and placed at such a distance that spectators could not approach within range of possible injury from the animals. This guard rope turned at a right angle from a post, near the passageway from the animal inclosure into the main tent, from which post, about three feet in height, it was carried across the end of the row of cages and fastened at a point about seven feet in height, to a pole supporting the wall of the tent.

In the cage nearest to the passageway, and just behind the slanting rope, was the leopard.

After viewing the animals, the plaintiff and his companion started to go into the main tent, the entrance to which they found barred by a rope. Many other people were crowding toward the same place. The boys decided to wait, and turned aside. Their view of the cages was cut off by the crowd, and, there being no obstruction to bar their way, other than the slanting rope referred to, in order to get a better view of the animals they walked under the rope and into the space between the leopard cage and the side wall of the tent, which space appears to have been about two feet wide. While the plaintiff was in this position, the leopard reached his forearm, or paw, between the bars of the cage, which were perpendicular and about three and one-half inches apart, and struck the boy's face, inflicting an injury to his right eye.

The court found that the plaintiff was injured solely because he willfully and knowingly, and without cause or excuse, placed himself within reach of the wild animal, which he knew to be ferocious and dangerous; and that the defendant, owner of the circus, was in no way guilty of negligence or lack of care in the premises, either in the keeping or exposing the leopard to view, and that the defendant did not omit to perform any duty in the premises.

Appellant contends that defendant's answer fails to deny plaintiff's allegation of negligence, and that it does not set up any contributory negligence of plaintiff as a defense to the action. [1] The complaint being predicated upon the keeping by defendant of a vicious and dangerous animal, known to defendant to be such, would have been sufficient without alleging negligence on the part of defendant. (Congress etc. Spring Co. v. Edgar, 99 U. S. 645, [25 L. Ed. 487, see, also, Rose's U. S. Notes]; 3 Corpus Juris, par. 358.) Such averment, if made, may properly be treated as surplusage. (Corpus Juris, supra.) The question of the owner's negligence is not in the case. (Clowdis v. Fresno Flume etc. Co., 118 Cal., at p. 321, [62 Am. St. Rep. 238, 50 Pac. 373].) However, the answer denies that the injury was caused by or through any negligence of the defendant, and specifically denies each fact which the plaintiff asserts in his attempt to charge facts showing negligence. It con-

tains certain affirmative allegations tending to negative any claim of negligence charged against defendant. The answer appears to be an express disclaimer of any negligence on the part of the defendant, and pleads that the injury occurred to the plaintiff solely by reason of the plaintiff's negligence, and want of care, in willfully placing himself within the guard rope, and behind the cage. The question of contributory negligence does not appear to have entered into, or to have been an issue of, the case. In other words, as counsel for respondents say in their brief, the defense is based "upon the proposition that the defendant was not negligent in any way, or manner, and that the injury occurred solely by reason of the fault and trespass of the plaintiff."

[2] The answer admits that defendant, and its employees, knew "that the leopard was a wild, untamed animal, of fierce, dangerous, vicious, ferocious character, nature, and disposition." By this admission, defendant charged itself with the duty toward the plaintiff, as well as all other persons, to guard the leopard in such manner as to absolutely prevent the occurrence of an injury to others through such vicious acts of the animal as it would naturally be inclined to commit. (*Gooding* v. *Chutes Co.*, 155 Cal. 620, [18 Ann. Cas. 671, 23 L. R. A. (N. S.) 1071, 102 Pac. 819]; *Parker* v. *Cushman,* 195 Fed. 715, [117 C. C. A. 71]; 3 Corpus Juris, par. 315, and cases cited.) The liability of the owner is absolute, in such cases, and he is bound to keep the animal secure, or he must suffer the penalty for his failure to do so, in making compensation for the mischief done, unless it can be shown that the person injured voluntarily, or consciously, did something to bring about the injury. (*Molloy* v. *Starin,* 191 N. Y. 21, [14 Ann. Cas. 57, 16 L. R. A. (N. S.) 445, 83 N. E. 588].) The gist of the action is not the manner of keeping the vicious animal, but the keeping him at all with knowledge of the vicious propensities. (*Hammond* v. *Melton,* 42 Ill. App. 186.) In such instances the owner is an insurer against the acts of the animal, to one who is injured without fault, and the question of the owner's negligence is not in the case. (*Laverone* v. *Mangianti,* 41 Cal. 138, [10 Am. Rep. 269]; *Clowdis* v. *Fresno Flume etc. Co.,* 118 Cal. 321, [62 Am. St. Rep. 238, 50 Pac. 373].)

[3] While the burden of the duty to exercise the highest degree of care rested upon defendant, it appears from the above authorities, and many others, to be equally as well established in this class of cases that, if the injured party imprudently, or negligently, places himself in a position to be attacked, or by his own negligence contributes to his injury, the owner of the wild beast may be exonerated from liability. (3 Corpus Juris, par. 315, and cases cited.)

In the present case, the court found that the injury to the plaintiff resulted solely by reason of his own fault; that the plaintiff "was a bright, intelligent, and alert boy, and was as well able to care for himself as an adult person of average intelligence; that he knew that the leopard was a wild, untamed animal, of fierce, dangerous, vicious, ferocious character, nature, and disposition; that he knew the guard rope was there, and knew its purpose was to prevent spectators from approaching within range of possible injury from the leopard; that he knew that the leopard could reach its paws out through the three and one-half inch space between the iron bars composing the cage, in which it was confined; and that he willfully and knowingly placed himself within reach of the animal." If this finding shall be allowed to stand, it will be sufficient to support the judgment in the case.

On the stand, the boy testified that he knew that the leopard was dangerous and ferocious, and that the guard rope was placed to keep people away from the animals, because they were dangerous; that he knew the safe place from which to look at the animals would have been on the outside of the rope. He further testified: "There was such a crowd of people, that I could not see the animals, so I walked back of the cage." He further testified that he did not know how close to the cage he was when the leopard hit him; that he thought he was far enough from the cage, so that the leopard would not touch him. The boy's companion said to him while they were standing between the wall of the tent and the leopard cage: "Don't go too close." There was evidence, also, that the manager of the show, and the superintendent, were standing about thirty feet away from the leopard cage. They saw the boys go under the rope "and hollered to them." Before they had time to do more than start to get the boys out of the dangerous place, the plaintiff had been hurt. No other guards or attendants

appear to have been near the scene of the accident. Signs reading, "Danger! Keep Away," were placed on all of the animal cages.

[4] In view of the testimony in the case, we are of the opinion that we cannot go behind the findings of the court, to the effect that the plaintiff failed to use ordinary care. "Youth is ever the time of heedlessness, of impulsiveness, and of forgetfulness" (*Guyer* v. *Sterling Steam Laundry Co.*, 171 Cal. 761, [154 Pac. 1057]), but the law imposes upon minors the duty of giving such attention to their surroundings, and care to avoid danger, as may fairly and reasonably be expected from persons of their age and capacity. (*Studer* v. *Southern Pacific Co.*, 121 Cal. 400, [66 Am. St. Rep. 39, 53 Pac. 942].)

[5] Whether a minor of tender years comports himself with the care and prudence due from one of his years and experience is strictly a question to be determined on the evidence. The question as to the capacity of a particular child at a particular time to exercise care in avoiding a particular danger is one of fact, falling within the province of a jury (or court) to determine. (*Mayne* v. *San Diego Electric Ry. Co.*, 179 Cal. 173, [175 Pac. 690], citing *Cahill* v. *E. B. & A. L. Stone & Co.*, 153 Cal. 571, [19 L. R. A. (N. S.) 1094, 96 Pac. 84], and *Consolidated etc. Ry. Co.* v. *Carlson*, 58 Kan. 66, [48 Pac. 635].) We cannot say, as a matter of law, at what age a boy would be possessed of such intelligence, foresight, and judgment as to charge him with negligence in a case like the present. (*Biggs* v. *Consolidated etc. Wire Co.*, 60 Kan. 223, [44 L. R. A. 655, 56 Pac. 4].) The care which a child is required to exercise in such matters is to be determined from the circumstances of the particular case in which his conduct is involved, and under the evidence there presented. (*Mayne* v. *San Diego Electric Ry. Co., supra.*)

We cannot say, as matter of law, that the plaintiff entered into the forbidden space, between the leopard's cage and the wall of the tent, without a full appreciation of the dangers and risk, and without sufficient judgment to know how to avoid them. These matters, and the further question whether or not he duly exercised such judgment as he possessed, were considerations of fact. (*Foley* v. *California Horseshoe Co.*, 115 Cal. 184, [56 Am. St. Rep. 87, 47 Pac.

42].)   We do not consider the present case such an exceptional one as to present the questions to us as unmixed questions of law to be determined by the court.

Just how far to apply the rule of accountability to a bright, ten year old boy at a circus, with the allurement and excitement attendant thereto, and keeping in mind the propensity to curiosity every normal boy possesses, was, no doubt, a matter of grave concern to the trial court, as it has been to us.   The court below, having before it all the facts and witnesses in the case, and particularly having an opportunity to hear the testimony, observe the actions, and determine the intelligence of the injured boy, has determined and announced its conclusion, which we do not feel we may properly reject.

The judgment is affirmed.

Kerrigan, J., and Richards, J., concurred.